UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | Case No. 3:12-CR-048 JD |
| | ) | |
| THOMAS G. KOUTTOULAS | ) | |

## OPINION AND ORDER

After serving a term of imprisonment on his conviction for wire fraud, Thomas G. Kouttoulas began serving a two-year term of supervised release on October 24, 2014. However, the probation office believes that Mr. Kouttoulas committed multiple violations of the conditions of his supervision, including by committing new crimes and by misleading his probation officers of the status of his employment, so it petitioned to revoke Mr. Kouttoulas' supervision. [DE 65]. The Court held an evidentiary hearing on those alleged violations, during which the government and Mr. Kouttoulas, by counsel, presented witnesses and exhibits. Both parties have also submitted supplemental briefs presenting arguments based on the evidence offered at the hearing. The government asks the Court to revoke Mr. Kouttoulas' supervised release and to impose a new term of imprisonment of 24 months—the statutory maximum, and well above the advisory 4-to-10 month guideline range. Mr. Kouttoulas denies that he has committed any violations of the terms of his supervision, and asks that he be allowed to continue serving his existing term of supervised release.

A court may revoke a defendant's term of supervised release only if it "finds by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3). Although a revocation hearing is not a formal trial and the Federal Rules of Evidence do not apply, the evidence needs to be reliable. *See United States v. Kelley*, 446 F.3d 688 (7th Cir. 2006) (citing *United States v. Pratt*, 52 F.3d 671 (7th Cir. 1995)); *see United States*

*v. Jordan*, 742 F.3d 276, 280 (7th Cir. 2014) (noting that "the rules of evidence do not apply to revocation hearings"). Hearsay evidence presents an exception to that general rule, as it also requires a finding that the interest of justice does not require the witness to appear. *United States v. Mosley*, 759 F.3d 664, 667–68 (7th Cir. 2014); Fed. R. Crim. P. 32.1(b)(2)(C). However, Mr. Kouttoulas did not raise any hearsay objections, and the Court does not rely on any hearsay evidence in making its findings, so that exception is not applicable here.

Mr. Kouttoulas is alleged to have violated three conditions of his supervised release, each in multiple instances. First, Mr. Kouttoulas is alleged to have violated the mandatory condition of supervision that he "not commit another federal, state, or local crime," by committing four new crimes: (1) criminal fraud under Indiana law, arising out of his sale of a used car; (2) false statements under federal law, in violation of 18 U.S.C. § 1001, by misrepresenting or failing to disclose his income to his probation officer; (3) misdemeanor battery under Indiana law, by bumping his chest against another person's; and (4) perjury under Indiana law, based on his testimony in a state small-claims trial. Second, Mr. Kouttoulas is alleged to have violated the condition that requires him to "answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer" by submitting two monthly reports that contained untruthful information. Third, Mr. Kouttoulas is alleged to have violated the condition that requires him to "notify the probation officer within ten (10) days of any change of residence or employment" by failing to notify his probation officer of changes in employment on two dates.

The Court first addresses the allegations that Mr. Kouttoulas committed the crimes of fraud, battery, and perjury. The Court then considers each of the remaining alleged violations together, as they are each based on allegations that Mr. Kouttoulas misrepresented or failed to disclose his income or employment status.

### A. Fraud

Mr. Kouttoulas is first alleged to have committed the offense of fraud under Indiana law, in violation of Indiana Code § 35-43-5-4(8). Under that section, a person commits fraud, a Class 6 felony, when the person, "with intent to defraud the person's creditor or purchaser, conceals, encumbers, or transfers property." Ind. Code § 35-43-5-4(8). The elements of this offense, as applicable here, are that (1) the defendant transferred property; and (2) the defendant had the specific intent to defraud his purchaser.[1] *Klinker v. First Merchants Bank, N.A.*, 964 N.E.2d 190, 193 (Ind. 2012) (identifying the elements of criminal fraud in an action under the Indiana Crime Victims' Compensation Act). The intent element is satisfied if the defendant's "conscious objective was to cause injury or loss to [his customer] by deceit." *Id.* at 194. The government alleges that Mr. Kouttoulas committed fraud in connection with his sale of a truck to Clarence Russell. There is no dispute that Mr. Kouttoulas transferred property from County Motors to Mr. Russell when he sold Mr. Russell the truck. Thus, the question is whether he did so with the specific intent to defraud Mr. Russell.

The Court finds as follows. In August 2015, Mr. Russell visited County Motors, a used car lot where Mr. Kouttoulas acted as a salesman. Mr. Russell was looking to buy a truck that could tow a trailer from Indiana to Florida, as he was moving to Florida. Mr. Kouttoulas told him that he had a 1999 Chevy S-10 pickup truck for sale. The truck was inside the garage at the time and had its hood up. Mr. Kouttoulas stated that there was a leak in the brake lines, but that he was going to fix it. Mr. Kouttoulas also stated that the truck was in good condition. Mr. Russell

---

[1] In its filings, the government identifies six elements as comprising the offense of fraud. However, the cases the government cites were discussing the civil cause of action for fraud, not the criminal offense of fraud, so those elements are not applicable here. *Compare Kesling v. Hubler Nissan, Inc.*, 997 N.E.2d 327, 335 (Ind. 2013) (cited by the government, reciting the six elements of "common-law fraud"), *with Klinker*, 964 N.E.2d at 193 (articulating the elements of the criminal offense of fraud). The distinction does not affect the outcome, though.

returned to the lot some time later, at which time Mr. Kouttoulas told him that he had fixed the brakes. Mr. Russell took the car for a test drive, and it appeared to be in good working order. Mr. Russell later purchased the truck for $2,900.

After Mr. Russell purchased the truck, he took it to a mechanic for an inspection. He then began to discover that the truck was not in as good a condition as he thought. A mechanic first advised him that the timing belt needed to be replaced, as it was about to break. Then, after an oil change, the truck began to run roughly. After further investigation, Mr. Russell learned that one of the cylinders in the engine had lost compression, meaning the engine would need to be rebuilt or replaced. Other parts, such as the water pump, thermostat, and ignition coils, needed to be replaced as well. In addition, the brake line on the front passenger side was severely rusted, and had likely never been replaced. However, the brake line on the driver's side had been replaced with a new hard line. That new line was connected to the brake line by a compression fitting, though, which is not supposed to be used in a brake system.

The government offers two bases for finding that Mr. Kouttoulas committed fraud. First, that Mr. Kouttoulas said that the truck was in good condition and just needed a tune-up, when the truck actually needed its engine rebuilt and a variety of other repairs. Second, that Mr. Kouttoulas said that the brake lines had been repaired or replaced when they had not been. The first basis cannot support a conclusion that Mr. Kouttoulas had the specific intent to defraud, though, because there is no evidence that Mr. Kouttoulas was aware of those various defects. As Mr. Russell testified, the truck was running well at the time he test drove it and at the time he bought it. It was not until after the oil was changed that the truck began to run roughly and it became apparent that more extensive repairs would be needed. Thus, Mr. Kouttoulas had reason to state that it was in good condition (which also had to be a relative term, given the age of the

4

vehicle) at the time of the sale. There was testimony at the hearing that the problem with the engine could be temporarily masked by using improperly thick oil, which is a ploy that might be used by a dishonest seller. However, it would require pure speculation to conclude on this record that Mr. Kouttoulas did so. Thus, without evidence that Mr. Kouttoulas knew his statement that the truck was in good condition was false, the Court cannot conclude on that basis that he had the specific intent to defraud Mr. Russell.

The representation about the brake lines presents a closer question, as the Court finds that Mr. Kouttoulas did represent that he had made a repair to the brakes, but the brake lines were still deficient when he sold the truck. However, the evidence showed that the driver's side brake line *had* been replaced. And Mr. Russell's testimony was not entirely consistent as to whether Mr. Kouttoulas stated merely that he made a repair to the brakes, or whether he stated that he had replaced *all* of the brake lines. In response to a leading question from the government, Mr. Russell testified that Mr. Kouttoulas told him that the brake lines had all been replaced. But other times, Mr. Russell characterized Mr. Kouttoulas' representation as that the brakes were working now, or that the brakes had been fixed. In addition, in the state small-claims trial over the sale of the truck, Mr. Russell testified that Mr. Kouttoulas "said he was replacing *a brake line* 'cause it was broke." (Government Ex. 13 p. 26 (emphasis added)). The evidence suggests that Mr. Kouttoulas (or someone) did exactly that—replaced *a* brake line, the hard line on the driver's side. Granted, Mr. Russell's mechanic also testified that the repair was shoddy, as it used an improper fitting. But that is not enough for the Court to conclude that Mr. Kouttoulas had the specific intent to defraud, as a repair had been made and the brakes were working at the time of the sale. Therefore, the Court cannot find by a preponderance of the evidence that Mr.

Kouttoulas transferred the truck with the specific intent to defraud Mr. Russell.[2] Accordingly, the Court cannot find that Mr. Kouttoulas violated a condition of his supervision by committing the criminal offense of fraud.[3]

**B.    Battery**

The government next asserts that Mr. Kouttoulas committed the criminal offense of misdemeanor battery under Indiana law, in violation of Indiana Code § 35-42-2-1(b)(1). That provision states, "A person who [1] knowingly or intentionally [2] touches another person [3] in a rude, insolent, or angry manner . . . commits battery, a Class B misdemeanor."

The Court finds by a preponderance of the evidence that Mr. Kouttoulas committed this offense when he bumped his chest into Angela Sullivan on October 3, 2015. On that day, Ms. Sullivan and her father, Mr. Russell, came to County Motors to confront Mr. Kouttoulas about the condition of the car that Mr. Russell purchased. Mr. Kouttoulas initially said to Mr. Russell that Mr. Russell had put him in a bad spot by not making his payment on time. Ms. Sullivan then introduced herself and began complaining about the condition of the vehicle. She also referenced Mr. Kouttoulas' previous federal conviction for wire fraud, apparently in an accusatorial tone. Mr. Kouttoulas became angry and walked towards Ms. Sullivan quickly and in an aggressive and agitated manner. He walked up very close to Ms. Sullivan and bumped his chest into hers, causing Ms. Sullivan to put her hands up to protect herself. Mr. Kouttoulas said with a raised voice that there is no lemon law for used cars, and that he would take the truck back and have it

---

[2] For what it's worth, the Court notes that this conclusion is not contrary to the judgment of the state court, which based its judgment against County Motors over the sale of the truck solely on the breach of an express warranty, not on a finding of fraud.

[3] The parties also argue over the effect of the truck having been sold "as is," but that fact is irrelevant in this context. As Indiana courts have recognized, "[a]n as-is provision disclaims implied warranties, but it 'provides no insulation from fraudulent misrepresentations.'" *Kesling*, 997 N.E.2d at 336 (quoting *Fimbel v. DeClark*, 695 N.E.2d 125, 128 (Ind. Ct. App. 1998)).

sold to another sucker by the next day. Mr. Kouttoulas finally told Mr. Russell and Ms. Sullivan to get off his property. He used profane language throughout this exchange.

These facts meet the elements of misdemeanor battery. Ms. Sullivan's testimony, which the Court found to be credible, was that Mr. Kouttoulas touched her with his chest. That satisfies the second element, that Mr. Kouttoulas touched another person, since "evidence of touching, however slight, is sufficient to support a conviction for battery." *Adetokunbo v. Indiana*, 29 N.E.3d 1277, 1281 (Ind. Ct. App. 2015). Both Ms. Sullivan and Mr. Russell also testified that Mr. Kouttoulas was quite angry and aggressive at the time, which satisfies the third element, that Mr. Kouttoulas touched Ms. Sullivan in a rude, insolent, or angry manner. And there is no question that Mr. Kouttoulas' actions were knowing and intentional, thus satisfying the first element. *See Mishler v. Indiana*, 660 N.E.2d 343, 348 (Ind. Ct. App. 1996) ("While the offense of battery requires knowing or intentional conduct in accordance with IC 35-42-2-1, the requisite intent may be presumed from the voluntary commission of the act.").

The Court acknowledges that other witnesses, including Mr. Kouttoulas, testified that Mr. Kouttoulas did not actually touch Ms. Sullivan. Bill Brett was inside the office at the car lot at the time, and testified that he observed the incident through the window. However, it was not clear that he would have been able to see from where he was sitting whether Mr. Kouttoulas' chest bumped into Ms. Sullivan. Mr. Russell also testified that Mr. Kouttoulas got up close to Ms. Sullivan and got in her space, but that he did not see Mr. Kouttoulas touch Ms. Sullivan. He did not specify, though, whether he meant only that Mr. Kouttoulas did not touch her with his hands, or that Mr. Kouttoulas did not come into any contact with her at all. And between Mr. Russell and Ms. Sullivan, Ms. Sullivan is more likely to know whether Mr. Kouttoulas actually touched her. Finally, Mr. Kouttoulas denied touching Ms. Sullivan. However, the Court finds

Ms. Sullivan's testimony on this point to be more credible than the testimony from Mr. Kouttoulas, who has an obvious self-interest. Therefore, the Court finds by a preponderance of the evidence that Mr. Kouttoulas violated a condition of his supervised release by committing the offense of misdemeanor battery.

**C.     Perjury**

The government next alleges that Mr. Kouttoulas committed the criminal offense of perjury during his testimony at the small claims trial over the sale of the truck to Mr. Russell. Under Indiana law, "A person who makes a false, material statement under oath or affirmation, knowing the statement to be false or not believing it to be true . . . commits perjury, a Level 6 felony." Indiana Code § 35-44.1-2-1.

The government first alleges that Mr. Kouttoulas committed perjury by denying that he made statements to Mr. Russell about the condition of the brakes. Mr. Kouttoulas testified as follows:

> Q.     Prior to the purchase of the '99 Chevy S10, did you state that there were issues with those brake lines?
>
> A.     No. No, Ma'am.
>
> Q.     You never made any claims to repair brake lines prior to him driving off the lot?
>
> A.     No, Ma'am. No.

(Government Ex. 13 p. 26). As discussed above, the Court finds that those statements were false. Based on Mr. Russell's testimony, the Court finds that Mr. Kouttoulas did tell Mr. Russell that the brakes needed to be repaired and that before Mr. Russell purchased the truck, Mr. Kouttoulas told him that he had repaired the brakes. Mr. Kouttoulas denied having made those statements (both in this Court and in state court), but simply put, the Court finds Mr. Russell to be the more credible witness on that point. And because Mr. Kouttoulas was testifying about what he had

personally said only a few months earlier, the Court finds that he knew this testimony was not true when he gave it. Moreover, this testimony was clearly material, as Mr. Russell's claim in the state court was that Mr. Kouttoulas made an express warranty about the brakes having been fixed, and the state court based its decision on that warranty. Therefore, the Court finds that Mr. Kouttoulas committed the offense of perjury, a Level 6 felony, in violation of a condition of his supervised release.

The government also alleges that Mr. Kouttoulas committed perjury by denying that he had ever been a licensed car dealer. The relevant testimony was as follows, with Mr. Kouttoulas responding to questions from Ms. Sullivan:

> Q. Are you licensed to be a dealer?
>
> A. Licensed for what?
>
> Q. To have a [*sic*] auto dealership.
>
> A. I'm not the owner of the dealership. My sister is the licensed –
>
> Q. Is there a reason you wouldn't be?
>
> A. My sister is the licensed dealer and; yes, she is licensed.
>
> Q. Okay. Would it be safe to say that approximately thirty days before you were released from federal prison for fraud –
>
> Mr. Bom: Objection, Your Honor.
>
> The Court: Sustained.
>
> Q. Your sister obtained –
>
> The Court: Sustained.
>
> . . . .
>
> Q. Are there any reasons why you, yourself, can't be licensed?
>
> A. There is no reasons [*sic*] why I believe. *I've never tried to become a licensed dealer*, but there's no – from my knowledge – I don't have any knowledge as to why or if I could or if I couldn't. I never –

9

| | | |
|---|---|---|
| Q. | How long have you been selling used cars? | |
| A. | For several years. | |
| Q. | Several years and you never wanted to obtain your own license? | |
| A. | Well, I've had car lots before. | |
| Q. | But not under your own license. | |
| A. | I've had car lots in my own name; yes. OK Used Cars for umpteen years. | |
| Q. | So you no longer carry a dealership license; is that what you're saying? | |
| A. | No, I don't. | |

(Government Ex. 13 p. 29–30 (emphasis added)).

The government contends that Mr. Kouttoulas committed perjury by testifying that "I've never tried to become a licensed dealer," when he was actually a licensed dealer for many years prior to his fraud conviction. The Court agrees with Mr. Kouttoulas, though, that when read in context, this statement is not perjurious. Ms. Sullivan had just referenced Mr. Kouttoulas' fraud conviction, and then asked if there was any reason why he can't—present tense—be licensed. Mr. Kouttoulas responded that he did not know, and that he had never tried to get a license. In that context, it is reasonable to interpret Mr. Kouttoulas as saying that he had never tried to get a license *since receiving his fraud conviction*, so he did not know whether he could get a license at present. And immediately following that statement, he admitted that he previously had a used car lot in his name for many years. The government responds by arguing that later admitting to a lie does not absolve a defendant of responsibility for the lie. However, as Indiana courts have recognized, "in a charge for perjury, the questions and answers in a sworn statement must be interpreted in their context." *Daniels v. Indiana*, 658 N.E.2d 121, 123 (Ind. Ct. App. 1995). Likewise, "It is well-settled that confusion or inconsistency alone is not enough to prove perjury." *Id.* Interpreting this testimony in its context, the Court does not find that Mr.

Kouttoulas made a knowingly false statement, and therefore does not find that Mr. Kouttoulas committed perjury through this particular testimony.

**D.     Remaining Violations**

Finally, the government asserts that Mr. Kouttoulas violated multiple conditions of his supervision by misrepresenting or failing to disclose his employment or income to the probation office. Mr. Kouttoulas is alleged to have made false statements to his probation officers, in violation of 18 U.S.C. § 1001, by stating that he had no earnings or income and that he was not employed or working. He is also alleged to have submitted monthly reports for July and August 2015 that contained untruthful information as to his employment and income, and to have failed to notify his probation officer within ten days of a change in his employment on two occasions. However, the Court cannot find by a preponderance of the evidence that Mr. Kouttoulas committed any of these violations.

As to the allegations that Mr. Kouttoulas misrepresented or concealed his income, there is simply no evidence to support that assertion. The government notes that Mr. Kouttoulas spent much of his time at County Motors, his sister's used car business, and that he was essentially acting as a full-time salesman. From that, the government extrapolates that he must have been earning an income. However, it is not difficult to believe that Mr. Kouttoulas would work for his sister's fledgling business without taking an income; he was living with and was supported by his mother, and County Motors provided fringe benefits such as the use of a car (which Mr. Kouttoulas properly disclosed). The government did not produce any evidence that Mr. Kouttoulas had actually received any payments from County Motors, or that Mr. Kouttoulas had any unexplained assets that may have represented income. The government also speculates that County Motors was making more money than it claims, and must have been using its earnings to

pay Mr. Kouttoulas or to insulate his assets against his restitution obligation.[4] But again, it is not difficult to believe that a start-up used car business would not turn a profit in its first year. Nor does the amount of cars that County Motors sold prove that it made a profit. Not only does County Motors have various expenses, but it accepts payments in the form of trade-ins and installment payments, meaning it does not always realize its profits at the time of a sale. It also presumably reinvests its earnings into replenishing its inventory. Thus, the Court rejects each of the alleged violations that are premised on misrepresentations as to Mr. Kouttoulas' income.

The government also asserts that Mr. Kouttoulas was dishonest about his employment status. However, the Court cannot find that Mr. Kouttoulas knowingly withheld or misrepresented this information, either. For example, the government asserts that Mr. Kouttoulas provided false information about his employment in his monthly reports for July and August 2015. In each of those reports, Mr. Kouttoulas stated under "Employment" that he was "assisting family member at County Motors—no income." He also stated that the car he was driving was owned by County Motors LLC, and that County Motors was providing him with gas, a phone, and the use of a vehicle. All of that information was true. The government argues that this information was nonetheless misleading or incomplete because Mr. Kouttoulas was not merely assisting a family member, he was performing the work of a full-time employee. That is too fine a distinction on which to find that Mr. Kouttoulas knowingly provided false information to the probation office, though. Given his lack of income from County Motors, it was not unreasonable for Mr. Kouttoulas to characterize his work there as "assisting a family member." And in any event, he still reported this activity under the heading of "Employment" and also reported that he

---

[4] Though Mr. Kouttoulas apparently stated to prospective buyers that he owned County Motors, that appears to be puffery, as there is no other evidence that Mr. Kouttoulas actually owned County Motors.

received the use of a car, a phone, and gas. That was sufficient information to alert the probation officers to inquire further if any additional details about Mr. Kouttoulas' activities would have been pertinent to their supervision of him.

Mr. Kouttoulas had also informed his first probation officer[5] that he was doing consulting work for his sister's business. Again, given his lack of income or salary from the business, it was not unreasonable for him to characterize his activity in that manner, as opposed to as employment. Beginning in February 2015, his monthly reports also stated that the car he was driving belonged to County Motors. Thus, Mr. Kouttoulas was certainly not concealing his association with County Motors. While the Court does not doubt that the probation officers may have been interested to know more about Mr. Kouttoulas' activities than what he told them, all they had to do was ask what he meant when he said he was "consulting" or "assisting" at County Motors. They never did so, though, and the Court cannot place the fault for that on Mr. Kouttoulas.

Ultimately, the Court finds that the information Mr. Kouttoulas provided to his probation officers was reasonably accurate and complete. Therefore, the Court cannot find that Mr. Kouttoulas violated any conditions of his supervision by misrepresenting his income or assets or otherwise being untruthful to the probation officers.

**E.     Conclusion**

For the reasons stated above, the Court finds that Mr. Kouttoulas violated the mandatory condition of his supervision that he not commit another crime, in that he committed battery and perjury. The Court dismisses the other alleged violations. Having found that Mr. Kouttoulas violated a condition of his supervision, the Court is authorized, though not required, to revoke his

---

[5] Mr. Kouttoulas was supervised by four different probation officers in less than one year.

supervised release. 18 U.S.C. § 3583(e)(3). Because perjury is a felony under Indiana law, Mr. Kouttoulas has committed a Grade B violation under the Guidelines. U.S.S.G. § 7B1.1(a)(2), (b). With a criminal history category of I, that produces a guideline range of 4 to 10 months of imprisonment. U.S.S.G. § 7B1.4(a). Pursuant to § 7B1.3(c)(1), that range can be satisfied by either (A) a sentence of imprisonment; or (B) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes home detention for any portion of the minimum term. However, that range is purely advisory, and the Court must also consider the factors specified in 18 U.S.C. § 3583(e) (referring to certain factors under § 3553(a)) in deciding the appropriate consequence. The Court will therefore reconvene the revocation hearing to accept argument from the parties as to the appropriate disposition.

SO ORDERED.

ENTERED:  April 19, 2016

/s/ JON E. DEGUILIO
Judge
United States District Court